[Crim. No. 3976. First Dist., Div. One. Dec. 6, 1961.]

In re CHARLES DeBACA, a Person coming under the Juvenile Court Law.

THE PEOPLE, Plaintiff and Respondent, v. CHARLES DeBACA, et al., Defendants and Appellants.

Herman W. Mintz, John A. Gunning, James Giller and David A. Himmelman for Appellants.

Stanley Mosk, Attorney General, Arlo E. Smith and Derald E. Granberg, Deputy Attorneys General, for Respondent.

TOBRINER, J.—We do not believe that appellants can sustain their attack upon the juvenile court's order that Charles DeBaca violated the provisions of section 211 of the Penal Code (robbery), that his commitment to the Youth Authority be continued, and that, in the court's recommendation, his parole be revoked. Although we have determined that appellants could properly appeal from the order, and that they did so within the time limitations, we cannot accept appellants' sole contention that substantial evidence does not support the court's finding that the allegations of the petition were true.

Pursuant to section 730 of the Welfare and Institutions Code, the Alameda County Probation Officer on January 19, 1961, filed a subsequent petition for further hearing as to Charles DeBaca, a juvenile arrested in an investigation for three robberies. The petition represented that on May 13, 1958, he had been declared a ward of the juvenile court and placed on probation, that on March 31, 1959, a new order had committed him to the Youth Authority and that subsequently he had been paroled by the Youth Authority. The petition also stated that he had on three occasions, subsequent to his parole, violated section 211 of the Penal Code. At the hearing on February 2, 1961, the court found that Charles did violate the provisions of section 211 of the Penal Code as alleged in the third count of the petition; the court ordered his continued commitment and recommended revocation of parole.

While respondent suggests some doubt as to the appealability of the order, and further urges that appellants filed the appeal too late, we believe that appellants could properly appeal from the order and that they did so within the time limitation. As we shall point out, however, appellants completely fail to sustain their argument that the evidence did not support the decision of the trial court.

 We believe that the order of the trial court may be appealed. Respondent raises a question as to such appealability because as to persons under its control the Youth Authority retains the sole power to grant and revoke parole. (Welf. & Inst. Code, § 1767.) Section 580 of that code, however, expressly holds appealable an order declaring a minor to be a ward of the court. Section 1737.5 of the code makes appealable an order committing a minor to the Youth Authority. Respondent, however, raises the question whether subsequent orders of the court are appealable inasmuch as the court can do no more than recommend to the Youth Authority the grant or revocation of parole.

Section 580 reads as follows: "A judgment or decree of a juvenile court assuming jurisdiction and declaring any person to be a ward of the juvenile court or a person free from the custody and control of his parents may be appealed from in the same manner as any final judgment, *and any subsequent order may be appealed from as from an order after judgment. . . ."* (Emphasis added.) Whatever, then, determines the right to appeal from an order after judgment fixes appellants' right to appeal here. Section 1237 of the Penal Code provides that "An appeal may be taken by the defendant: . . . 3. From any order made after judgment, affecting the substantial rights of the party."

The recommendation and findings of the juvenile court affect the substantial rights of Charles; while the recommendation is not binding upon the Youth Authority, it carries a persuasive effect. The process of the juvenile court in hearing and determining armed robbery charges is not perfunctory. The court decides if the juvenile participated in, and perpetrated, the crime. To that extent the findings and recommendation affect the substantial rights of the juvenile.

Concurring in the observations of respondent, we note that the order "does constitute the final action by the juvenile court on this petition (see Code Civ. Proc., § 963(1) . . .)." An appeal would constitute the only avenue of attack which the juvenile could pursue as to this recorded adjudication that he has committed a crime. Such a decision reflects upon his character and casts a shadow upon his future, substantially affecting his rights. We conclude that the order of the juvenile court is appealable as a "subsequent order" under section 580 of the Welfare and Institutions Code.

 As we have previously stated, we have likewise concluded that the appeal was timely filed. While, if this pro-

ceeding were to be regarded as criminal (rule 31(a), Rules on Appeal) the appeal would have been tardy, the instant matter is civil in nature, and the appeal properly filed within the 60-day period. (Rule 2(a), Rules on Appeal.)

Section 736 of the Welfare and Institutions Code provides that "An order adjudging a person to be a ward of the juvenile court shall not be deemed to be a conviction of crime." The cases have applied this provision in a variety of situations. Thus *People* v. *Gomez* (1957) 152 Cal.App.2d 139, 143 [313 P.2d 58], ruled that the section means that an order of the juvenile court declaring a minor to be a ward of the court should not be construed as a conviction of a felony within the purview of section 2051 of the Code of Civil Procedure relating to the impeachment of witnesses. As the court stated in *In re Schubert* (1957) 153 Cal.App.2d 138 [313 P.2d 968], "rules of the criminal law do not necessarily apply to proceedings in the juvenile court." (P. 141.)

*In re Edwards* (1929) 99 Cal.App. 541, 544 [278 P. 910, 290 P. 591], holds that a juvenile court of a county in which the juvenile did not reside, and to which he had been brought, lacked jurisdiction. If the proceeding had been criminal in nature, the court would not have inquired into the reason for his presence in the county; the matter being a civil proceeding, the court did not obtain jurisdiction. Further, the degree of proof required in a hearing before the juvenile court is different from that required in a criminal trial. The purpose of a juvenile hearing is to guide the ward in the future and not to punish him for his past misdeeds. (*In re Dargo* (1947) 81 Cal.App.2d 205, 207 [183 P.2d 282].)

The uniform treatment of juvenile proceedings as civil in nature necessarily decrees that the appeal is civil in nature. The appeal was therefore timely filed.

■ Having determined that appellants have presented a proper appeal, we now turn to the only issue raised by appellants: whether substantial evidence supported the court's finding that Charles participated in an armed robbery of the Henrietta Style Shop.

Three boys robbed the Henrietta Style Shop of $150 at about 5:50 p. m. on the night of October 31, 1960. The owner, Mrs. Henrietta Franke, and three clerks, Matilda Hood, Lillian Phelps and May Clark, were the only persons in the store at the time. Two of the boys approached Mrs. Phelps and asked for a gift for a girl friend. Mrs. Phelps showed them some sweaters. About five minutes later one of the youths said

" 'This is a hold-up,' " ordering two of the clerks to lie on the floor. One of the boys, about 15 or 20 feet away, remained standing at the door. Two of the boys were armed with guns and a third had a knife. After seizing the money and before leaving, the boys took the four women into the back room of the store, tied them up, made them lie on the floor and then covered them with clothing.

Appellants basically attack the witnesses' identification of Charles as one of the perpetrators of the crime. They contend that the court decided the case on a prehearing reading of the probation officer's report, which they characterize as misleading and not supported by the evidence. They complain that the report states that two of the witnesses were prepared to identify Charles positively but that the witnesses did not do so at the hearing. The portion of the report upon which they base these objections reads as follows: ''Mrs. Henrietta Franke (Henrietta's Style Shop), subpoenaed, states that she is prepared to positively identify both Joseph Toth and Charles DeBaca. Mrs. Lilliam Phelps (Henrietta's Style Shop), subpoenaed, states that she is prepared to positively identify Joseph Toth and Charles DeBaca. Mrs. Matilda Hood (Henrietta's Style Shop), subpoenaed, states that she is prepared to positively identify Joseph Toth and Ralph Lovato.''

An analysis of the testimony of these witnesses clearly repels the attack. Substantial evidence upholds the court's finding. No scintilla of showing supports the claim of predetermination of the court.

The identification by Mrs. Phelps was definite. She had held a sweater under Charles' chin; she later picked him out of a line-up. On cross-examination she did say that she did not really look at the faces of the boys until Charles ''held . . . [the gun] right up to me.'' Later, when defense counsel again questioned the identification, she said, ''I am almost sure it was him.'' Appellants' attorney then asked if she was ''reasonably sure.'' She answered, ''Yes.'' She did admit that she was ''not positive.''

Mrs. Phelps' identification may not have been as strong as the probation officer's report indicated, but the uncertainty only developed after a rigorous cross-examination. While the identification may not have been positive, it surely was reasonably certain. This identification alone sufficiently sustains the court's finding.

Mrs. Franke testified that she was ''reasonably sure'' of her identification of Charles, but did not say that she was

"positive." She stated that a week before the line-up she had identified his photograph from a dozen or more pictures, selecting the three likenesses of the boys then before the court. She did not, however, designate Charles at the line-up. She repeated that she was reasonably sure of the identification, but not positive.

Mrs. Hood did not purport to be able to identify Charles, and the probation officer's report did not say that she could.

The testimony of Mrs. Franke and Mrs. Phelps, and particularly the testimony of the latter, served as substantial evidence to support the trial court's finding. The identification of Charles involved a question of fact, and the court's determination of it will stand unless inherently incredible. ▮ As stated in *People* v. *McNeal* (1954) 123 Cal.App.2d 222, 224 [266 P.2d 529], "The question of identification of the accused as the person who committed the crime was a question for the jury unless the evidence of identification was incredible as a matter of law." (To the same effect: *People* v. *Thompson* (1957) 147 Cal.App.2d 543, 546 [305 P.2d 274].) ▮ The court pointed out in *People* v. *Huston* (1943) 21 Cal.2d 690 [134 P.2d 758] : "To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions." (P. 693.) The testimony of witnesses Franke and Phelps did not consist of anything "inherently improbable" or physically impossible.

The final reliance of appellants upon Charles' denial of the offense and his father's alibi testimony is not availing. The testimony did no more than raise conflicts in the evidence resolvable by the trial court. (*People* v. *Thompson, supra,* 147 Cal.App.2d 543.)

We entertain not the least doubt that substantial evidence supported the finding of the juvenile court.

We affirm the order.

Bray, P. J., and Sullivan, J., concurred.

A petition for a rehearing was denied December 26, 1961.