Filed 5/14/15  In re Isabella A. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re ISABELLA A., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, | G051173 |
| Plaintiff and Respondent, | (Super. Ct. No. DP024968) |
| v. | O P I N I O N |
| LUCY A., | |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Dennis J. Keough, Judge.  Affirmed.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Jeannie Su, Deputy County Counsel, for Plaintiff and Respondent.

\*     \*     \*

Lucy A. (mother) appeals from the juvenile court's dispositional judgment ordering family maintenance services (Welf. & Inst. Code, §360, subd. (b), all statutory further citations are this code).[1]  Mother contends there was insufficient evidence to show there was a substantial risk of harm to her daughter Isabella A. (born in April 2014).  For the reasons expressed below, we affirm.

I

FACTS AND PROCEDURAL BACKGROUND

The Orange County Social Services Agency (SSA) filed a petition in May 2014 alleging Isabella came within the juvenile court's jurisdiction under section 300, subdivision (b), because she had suffered, or was at risk of suffering, serious physical harm resulting from her parents' failure or inability to supervise and protect her, and her parents lacked the ability to provide regular care due to their substance abuse.  Specifically, the petition alleged that while pregnant with Isabella mother tested positive for amphetamine, methamphetamine and marijuana when admitted to the hospital with pregnancy complications, Isabella was born prematurely (34 weeks, or six weeks early), Isabella's meconium contained amphetamine and marijuana, and mother had not sought regular prenatal care.  Mother had a criminal history, including assaultive offenses and driving under the influence.  The father, James F., had a history of drug-related offenses.[2]  Mother stated she had a medical marijuana card and had used marijuana three or four times during the pregnancy, but had not informed her obstetrician.  Mother could not explain why she tested positive for methamphetamine.

---

[1]    Section 360 provides "(b) If the court finds that the child is a person described by Section 300, it may, without adjudicating the child a dependent child of the court, order that services be provided to keep the family together and place the child and the child's parent or guardian under the supervision of the social worker for a time period consistent with Section 301."

[2]    Father did not participate in the juvenile court proceedings and has not appealed.

At the detention hearing, the court ordered substance abuse testing for the parents, paternity testing, and monitored visits for mother once Isabella was released from the hospital. SSA subsequently placed the child in the maternal grandmother's home, and granted mother liberal visitation.

On June 10, 2014, mother tested positive for amphetamine and methamphetamine, but denied using these drugs. We discuss other facts relevant to our disposition in section II.

The juvenile court conducted the jurisdiction hearing on various dates in September through December 2014. The court admitted SSA's initial and addendum reports into evidence, and heard testimony from mother and the social worker. The court found Isabella was at substantial risk of suffering serious physical harm or illness based on her mother's unresolved substance abuse. At disposition, the court refrained from declaring Isabella a dependent child of the court, and ordered family maintenance services under the supervision of the social worker (§ 360, subd. (b)).

II

DISCUSSION

*Substantial Evidence Supports the Jurisdictional Finding*

Mother challenges the sufficiency of the evidence to support the jurisdictional finding there was a substantial risk Isabella would suffer serious physical harm or illness. We conclude ample evidence supports the court's decision.

Section 300, subdivision (b)(1), requires the juvenile court to exercise jurisdiction where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or . . . by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's . . . substance abuse."

We review the jurisdictional finding for substantial evidence, which is defined as evidence that is "'reasonable, credible, and of solid value. . . .'" (*In re Angelia P.* (1981) 28 Cal.3d 908, 924.) The substantial evidence standard poses a difficult hurdle for an appellant. "If there is any substantial evidence, contradicted or uncontradicted, which will support the judgment, we must affirm." (*In re Tracy Z.* (1987) 195 Cal.App.3d 107, 113.) A reviewing court is in no position to judge the credibility of witnesses or reweigh the evidence, and therefore must resolve all evidentiary conflicts in favor of the juvenile court's findings. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 947; *In re Nada R.* (2001) 89 Cal.App.4th 1166, 1177.)

Here, the record reflects mother tested positive for amphetamine, methamphetamine and marijuana at the time of Isabella's premature birth. Isabella's meconium indicated she had been exposed to drugs in utero. Mother initially denied any drug use, but later admitted using medical marijuana during Isabella's pregnancy. Mother could not explain why she tested positive for methamphetamine and denied ever using the drug. Mother suggested her daily use of Sudafed could explain her positive drug tests, but a public health nurse stated Sudafed could not account for a positive methamphetamine test.

Mother testified she told her obstetrician she was taking Sudafed and ephedrine, although she earlier had told the social worker she had not informed the doctor. The obstetrician stated mother's drug use could have caused a rise in blood pressure leading to preterm labor. Mother claimed she received regular prenatal care after finding out she was pregnant in October 2013, but the obstetrician's office stated mother had been late in seeking prenatal care and was not seen in the office until early January 2014. Although mother asserted she would do whatever was necessary to reunify with Isabella, she refused to sign a release of information for medical records so the social worker could verify and evaluate her marijuana authorization and need for treatment.

In early May, a nurse in the neonatal intensive care unit reported Isabella had difficulty feeding and consumed only 10 to 15 percent of her formula. The nurse stated this could be due to drug use during pregnancy, but a definitive cause was unknown.

Mother missed a drug test on June 7, 2014. On June 10, 2014, she voluntarily tested at a facility of her own choosing and tested positive for amphetamine and methamphetamine. About five hours later, she took another drug test and tested positive for amphetamine. Mother again attributed the positive amphetamine test to taking Sudafed, but a lab technician stated even a large quantity of Sudafed could not have accounted for the positive test. Mother missed another drug test on June 12, 2014. She had a positive test for alcohol on June 24, 2014, but drug tests after June 10 were negative. Mother testified at the jurisdiction hearing she assumed her drug tests were negative "because I do not do drugs."[3]

Based on this record the juvenile court had little choice but to find mother had an unresolved substance abuse problem posing a risk of serious harm to Isabella at the time of the jurisdiction hearing. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 767 [for children under six years old, finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm].) As the court noted, despite knowing she had a high-risk pregnancy with significant risk factors, mother chose to abuse drugs. This posed a significant risk of substantial harm to the child in utero. Mother delayed seeking prenatal care, lied to the social worker about when she first obtained care, and failed to disclose her drug use to her obstetrician. Her desire to breastfeed Isabella even though she was using methamphetamine and alcohol demonstrates her inability to recognize the risk her substance abuse posed to her child. Based on mother's drug use during the pregnancy

_____

[3]     For the most part, mother invoked her Fifth Amendment right not to answer questions addressing drug use.

and thereafter, issues concerning prenatal care, and mother's questionable credibility concerning drug use and prenatal care, the juvenile court reasonably could conclude mother's decisionmaking was impaired and Isabella was at substantial risk of physical harm or illness.

Although mother completed programs recommended by the social worker before the jurisdiction hearing concluded in December 2014, including a parenting class and substance abuse treatment, ample evidence supports the juvenile court's conclusion an insufficient period of time had elapsed to mitigate the risk of harm. Indeed, mother's continued denial of drug use called into question whether she had gained the insight needed to safely parent Isabella without continuing supervision. The court did not err in denying mother's motion to dismiss (§ 350, subd. (c)), and substantial evidence supports the court's finding under section 300, subdivision (b).

## III

### DISPOSITION

The judgment is affirmed.


ARONSON, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

6